USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _04/03/2020_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

UNITED STATES OF AMERICA    :

          :        19-CR-212 (VEC)

    -against-      :

          :        MEMORANDUM

ALBERT MCDUFFIE,     :        OPINION AND ORDER

          :

          Defendant.   :

--------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendant Albert McDuffie seeks release from pre-sentence detention arguing that his rheumatoid arthritis makes him particularly susceptible to COVID-19, a highly infectious and potentially fatal illness that has been found in the facility in which he is being detained. Although defense counsel brings this motion pursuant to 18 U.S.C. § 3142(i), which allows for temporary pre-trial release for a "compelling reason," the motion is governed by 18 U.S.C. § 3145(c), which applies when a defendant is awaiting sentencing. As set forth below, Mr. McDuffie's motion will be granted because of the interplay between the COVID-19 pandemic and his health considerations; under these circumstances, the proposed release conditions are adequate to ensure the safety of the community and his return to court.

## BACKGROUND

Albert McDuffie is 47-years old and has resided in Queens, New York for his entire life. Pretrial Report at 2. He was arrested on March 28, 2019, for conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A). Dkts. 2, 15. On December 20, 2019, Mr. McDuffie pleaded guilty to a lesser included offense of conspiracy to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(B), which carries a

mandatory minimum of five years and a maximum of forty years. Plea Tr. (Dkt. 144) at 9. He had no criminal history before this case. Pretrial Report at 4.

At the time of his arrest, Mr. McDuffie moved for pretrial release, which this Court denied due to the danger he posed to the community. Bail Tr. (Dkt. 58) at 52. Specifically, thirteen firearms, including an AK-47, had been seized from Mr. McDuffie's residence and shed, along with significant quantities of cocaine and heroin. *Id.* at 25, 46–47. Thus, although Mr. McDuffie's local ties made him unlikely to flee, the Court found that he had not rebutted the presumption, under 18 U.S.C. § 3142(e)(3), that "no condition or combination of conditions [would] reasonably assure . . . the safety of the community." Bail Tr. (Dkt. 58) at 52.

Since the guilty plea, Mr. McDuffie has been subject to mandatory detention while awaiting sentence. *See* 18 U.S.C. § 3143(a)(2). Due to the COVID-19 pandemic, the Court adjourned the sentencing hearing from April 8, 2020, to May 8, 2020. Dkt. 172.[1]

On March 29, 2020, Mr. McDuffie filed a motion for "compassionate release" due to the COVID-19 outbreak. Dkts. 177–78. In particular, defense counsel represented that Mr. McDuffie suffers from rheumatoid arthritis (an autoimmune disease), high blood pressure, and cardiac issues, all of which increase his risk of contracting COVID-19 and of experiencing complications from any such infection. *See* Dkt. 177 at 1. An individual suffering from rheumatoid arthritis may be especially vulnerable to COVID-19 both because the condition reflects a malfunction of the immune system and because the medication used to treat it has the effect of suppressing the body's natural immune response.[2] The Government does not dispute

---

[1]      Depending on the course of the pandemic, that date could again be adjourned. Even if Mr. McDuffie were to be sentenced in the immediate future, it is unclear when BOP will recommence the movement of prisoners out of local detention facilities.

[2]      Meghna Rao, *Expert Advice on Coronavirus Risk in Immunocompromised Patients With Rheumatic Diseases*, Rheumatology Advisor (Mar. 16, 2020), https://www.rheumatologyadvisor.com/home/ general-rheumatology/risk-for-coronavirus-in-immunocompromised-patients-with-rheumatic-diseases-q-a/; Hospital for

that Mr. McDuffie suffers from those conditions, although it argues that the exact relationship between Mr. McDuffie's autoimmune disease and COVID-19 has not been adequately studied, and that there is uncertainty as to the precise stage of Mr. McDuffie's condition. Hearing Tr. (Apr. 2, 2020) at 9–10.

The Government has acknowledged that, between March 30 and April 2, confirmed COVID-19 cases at the Westchester County Correction Facility ("WCCF"), in which Mr. McDuffie is currently detained, increased from one to six, among an inmate population of roughly six hundred. Hearing Tr. (Apr. 2, 2020) at 9; Gov. Opp. (Dkt. 179) at 3. No information has been provided to the Court as to the number of tests conducted or requested in the facility. According to the Government, WCCF has, in response to the outbreak, reduced physical contact at the facility, distributed protective gear to staff, and required inmates to wear a mask when outside of their cells. Hearing Tr. (Apr. 2, 2020) at 8–9.

At the April 2 telephonic hearing, defense counsel proposed that Mr. McDuffie be released to home incarceration, into the custody of his brother, Zeshawn McDuffie, who is a retired corrections officer residing in Westbury, Long Island. Hearing Tr. (Apr. 2, 2020) at 18–19, 23. Zeshawn McDuffie spoke at the hearing and represented to the Court that his household consists of his wife, who is a registered nurse employed on a per diem basis by Mt. Sinai Hospital, and his two children, ages 12 and 7, who are now being homeschooled because schools have been closed. Hearing Tr. (Apr. 2, 2020) at 19, 23. Zeshawn McDuffie further indicated that, while his wife may soon be called to work at the hospital, potentially exposing herself to COVID-19, Mr. McDuffie could be isolated in the basement of the home for the initial period, after which he would have his separate bedroom and bathroom. Hearing Tr. (Apr. 2, 2020) at 20,

---

Special Surgery, *What to Know About Rheumatic Disease and the COVID-19 Coronavirus* (Mar. 15, 2020), https://www.hss.edu/conditions_rheumatic-disease-and-COVID-19-coronavirus.asp.

22–24.  Furthermore, Zeshawn McDuffie assured the Court that he could be financially responsible for Mr. McDuffie during the period of home confinement, relying on the former's retirement and rental income.  Hearing Tr. (Apr. 2, 2020) at 20.

The Government opposes Defendant's motion, arguing that he remains dangerous, given evidence suggesting that Mr. McDuffie, despite the absence of a criminal history, had proven access to firearms and drugs.  Hearing Tr. (Apr. 2, 2020) at 14.  Notwithstanding the pandemic, there likely still exists significant demand for illicit drugs, and Mr. McDuffie could conceivably conduct transactions without physical interaction to support himself financially.  Hearing Tr. (Apr. 2, 2020) at 18.  The Government also notes that, given the novelty of COVID-19, there is much that is unknown, even to experts, about COVID-19 and comorbidities.  Hearing Tr. (Apr. 2, 2020) at 10–11.

## DISCUSSION

Because Mr. McDuffie has been found guilty of an offense prescribed in the Controlled Substances Act for which the maximum sentence is at least ten years, he is subject to mandatory detention, absent an applicable exemption.  *See* 18 U.S.C. § 3143(a)(2) (cross-referencing offenses listed under 18 U.S.C. § 3142(f)(1)(A)–(C)).  Neither of the exemptions within § 3143(a)(2) applies.[3]  The question, therefore, is whether Mr. McDuffie may avail himself of the exceptional circumstances exemption, as set forth under 18 U.S.C. § 3145(c).[4]

Section 3145(c) provides that a person detained under 18 U.S.C. § 3143(a)(2) may be released if the individual "meets the conditions of release set forth in section 3143(a)(1)" and "if

---

[3]    Section 3143(a)(2) exempts a defendant when there is a "substantial likelihood that a motion for acquittal or new trial will be granted," or when "the Government has recommended that no sentence of imprisonment be imposed," if the Court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."  Here, Defendant pleaded guilty, and he is subject to a five year minimum mandatory sentence.

[4]    18 U.S.C. § 3142(i), in contrast, applies only to pretrial detainees.

it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." To satisfy 18 U.S.C. § 3143(a)(1), the defendant must show, "by clear and convincing evidence[,] that [he or she] is not likely to flee or pose a danger to the safety of any other person or the community if released" under appropriate conditions imposed by the Court. Thus, Mr. McDuffie's bail motion can be granted only if there is (1) clear and convincing evidence that he is not a flight risk or a danger to others and (2) an exceptional reason why his detention is inappropriate. *See United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) (citing *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991)).

There is no serious dispute that Mr. McDuffie is unlikely to flee. He is a lifelong resident of New York and has extensive family and community support in the area. At the April 2 telephone conference, over 40 members of the public dialed into the Court's conference call to show support for Mr. McDuffie—a showing reminiscent of attendance at earlier proceedings. Hearing Tr. (Apr. 2, 2020) at 2, 24. Moreover, any flight attempt would be hampered by his surrendering of travel documents and the general travel restrictions precipitated by the COVID-19 pandemic.

Given Mr. McDuffie's prior possession of an entire arsenal of firearms, along with significant quantities of drugs, his ability to carry his burden as to lack of dangerousness is a closer question. The Court, however, finds that home incarceration at his brother's residence in Westbury, Long Island, with electronic monitoring, under these pandemic conditions, adequately reduces the risk of danger that Mr. McDuffie would otherwise pose to others, particularly given that Mr. McDuffie has no known history of violence (despite the possession of many dangerous weapons) and has been confined for over a year without any notable infractions. While the Government argues that it might not have recovered all of Mr. McDuffie's firearms, some of

which were concealed in the walls of Defendant's residence, the Court finds that house arrest in Long Island with electronic monitoring adequately ensures that Mr. McDuffie will not return to areas within his control in Queens, where he could have stashed other weapons.  Similarly, while the Court concurs with the Government that the COVID pandemic has not erased or even reduced the demand for unlawful narcotics, the Court finds it exceedingly unlikely that anyone would travel from Flushing, Queens to Westbury, Long Island, during the midst of a pandemic, to procure drugs from someone who is under house arrest (with a former corrections officer no less), when the drugs could most assuredly be readily obtained locally.  Additionally, while it is true that Mr. McDuffie was unemployed prior to his arrest and is unlikely to find new employment during the pandemic, his brother has assumed financial responsibility, which obviates any need for Mr. McDuffie to use the drug trade to support himself.  Finally, the Court is satisfied that Mr. McDuffie, for the sake of his own health and safety, is not likely to risk fatal exposure of his weakened immune system to COVID-19 by conducting drug transactions— especially not while he is awaiting a sentence from this Court that could potentially send him to prison for the rest of his life.

Having satisfied the requirements of § 3143(a)(1), Mr. McDuffie must next demonstrate that there exists an exceptional circumstance that renders his continued detention inappropriate. As the Second Circuit has held, "[e]xceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'"  *Lea*, 360 F.3d at 403 ("[D]istrict courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'") (quoting *DiSomma*, 951 F.2d at 497).  Circumstances such as "going to school, being employed, or being a first-time offender" are too common to qualify for the exception.  *Id.* at 403–04.

Here, the combination of a once-in-a-lifetime pandemic and an immune system disorder suffices. The federal government currently anticipates more COVID-19 deaths in the United States, within the span of one year, than the nation's total casualties during World War I.[5] *See also United States v. Stephens*, No. 15-CR-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (recognizing "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"). New York City and its surrounding areas are now facing the brunt of that crisis— and the risks are higher still in prison settings.[6] In the context in which preliminary detention could be a death sentence, courts, more than ever, must take all reasonable steps to ensure that individuals are detained only when there is no legal and viable alternative. *See Nkanga*, 2020 WL 1529535, at *1 ("Realistically, the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible.").

In addition to being detained in a facility with multiple positive diagnoses, in one of the hardest-hit areas in the world, Mr. McDuffie suffers from a condition that weakens his body's ability to ward off infections—not to mention heart issues that could further elevate his risk of complications, *see Little*, 2020 WL 1439979, at *2 (citing CDC guidance about cardiac issues). Indeed, even the Government concedes that Mr. McDuffie is in a "unique" situation. Hearing Tr. (Apr. 2, 2020) at 10 ("Obviously the defendant has unique health conditions."). Although the Government argues that the precise relationship between rheumatoid arthritis and COVID-19 has

---

[5]     Dan Mangan et al., *Coronavirus could kill more Americans than WWI, Vietnam or Korean wars, White House projection shows*, CNBC (Apr. 1, 2020), https://www.cnbc.com/2020/04/01/coronavirus-could-kill-more-americans-than-some-wars.html.

[6]     *See, e.g.*, *United States, v. Nkanga*, No. 18-CR-713, 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("Those detained in jails and prisons face particularly grave danger.") (collecting sources); *United States v. Little*, No. 20-CR-57, 2020 WL 1439979, at *2 (S.D.N.Y. Mar. 24, 2020) ("Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.").

not been fully explored, that relationship cannot be conclusively proven until large numbers of immunocompromised individuals are exposed to the novel disease. Even without controlled studies, the likely result of combining a diminished immune system with a highly infectious and potentially fatal virus, for which there is no known cure, is self-evident. In other words, the risk to Mr. McDuffie's health and safety is sufficiently apparent that denying his release for lack of further research would amount to a callous gamble on his life.[7] *See, e.g.*, *United States v. McKenzie*, No. 18-CR-834, 2020 WL 1503669, at *3 (S.D.N.Y. Mar. 30, 2020) ("[T]he heightened threat posed by COVID-19 to an inmate with a documented respiratory condition in a detention facility with multiple confirmed cases presents a unique combination of circumstances." (citation omitted)); *United States v. Campagna*, No. 16-CR-78, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason.").

Having determined that Mr. McDuffie qualifies for release under § 3145(c), the Court must impose "appropriate conditions" to ensure that he returns to court and does not pose a danger to others. *See* 18 U.S.C. § 3145(c). During his release pending sentence, the following conditions shall apply:

---

[7]     To be sure, the rationale for releasing Mr. McDuffie—to protect him from the extraordinary threat of COVID-19—would fall flat if he were to face a greater risk of infection outside of jail than inside. As discussed at the hearing, that prospect is non-negligible, as Mr. McDuffie's sister-in-law works as a registered nurse at Mt. Sinai Hospital, where she will almost certainly encounter patients suffering from COVID-19. The Court, however, concludes that the risk that Mr. McDuffie would become infected by a trained nurse, whom the Court trusts will take every precaution possible to avoid infecting the rest of her family, including her husband and two young children, is still less than the risk he faces at WCCF. Despite WCCF's best efforts—and the Court has complete confidence that WCCF is doing the best it can under fraught circumstances—it has a rotating staff that appears to be serving a rapidly growing number of actual and potential COVID-19 cases. Corrections officers are trained to keep jail facilities secure; their training on avoiding infectious diseases is unlikely to be as substantial as a registered nurse's. *See Little*, 2020 WL 1439979, at *2 ("[P]eople who work in the [pretrial detention] facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in [] pretrial detention centers.").

1. $150,000 personal recognizance bond co-signed by three financially responsible persons, one of whom must be Mr. McDuffie's brother, Zeshawn McDuffie (phone number 646-335-6550), who shall also serve as the third-party custodian.

2. Home incarceration with electronic monitoring at Zeshawn McDuffie's primary residence, at 34 Marietta Drive, Westbury, New York 11590.

3. Unless otherwise approved by the court, the location monitoring equipment shall be installed no later than 14 days after release during which the defendant is ordered to self-quarantine.

4. All mandatory conditions of release set forth in the standard "Order Setting Conditions of Release" form.

5. No visitors to the residence except for family members and defense counsel.

6. Pretrial Services supervision as directed by the Pretrial Services officer.

7. Surrender of all passports and other travel documents and no applications for new or replacement documents.

8. The defendant shall have no access to the internet or any internet-enabled device, except for purposes of supervision by Pretrial Services.

9. Within two weeks of his release, the defendant must purchase or secure an iPhone with Facetime capabilities for remote/virtual monitoring by Pretrial Services. Defense counsel may seek client service funds from David Patton at the Federal Defenders of New York for this purpose; this condition is waived if such funds are unavailable.

10. The defendant shall not have contact with any co-defendants, witnesses or victims.

11. Drug testing as directed by Pretrial Services.

12. No possession of a firearm.

13. The defendant shall not use or possess any narcotic drug or controlled substance unless prescribed by a licensed medical professional.

14. The defendant shall promptly inform Pretrial Services when any cohabitant of the residence, including himself, becomes symptomatic of any illness.

The Court finds those conditions, taken together, adequately protect the safety of community and ensure the return of Mr. McDuffie for sentencing while minimizing the threat to his health.

Because his release is tied to the threat of the COVID-19 pandemic, Mr. McDuffie's release shall be reassessed every 45 days, to determine whether the exceptional circumstances justifying his release have dissipated. No longer than 72 hours following his release from WCCF, Mr. McDuffie and his counsel, along with counsel for the Government, must appear for a teleconference with the Court to ensure that Mr. McDuffie fully understands the conditions of his release.

## CONCLUSION

For the reasons stated above, Defendant Albert McDuffie is ordered released immediately upon compliance with the applicable conditions. Upon Mr. McDuffie's release, defense counsel must propose a time and date within 72 hours for a teleconference with the Court that is convenient to the Government by filing a letter on ECF.

No later than **May 15, 2020**, the parties must submit a joint letter discussing whether extraordinary reasons compelling Mr. McDuffie's release continue to exist. Mr. McDuffie's sentencing hearing is adjourned from May 8, 2020, to **June 30, 2020, at 11:00 A.M.** Sentencing submissions are due by **June 16, 2020**.

The Clerk of Court is respectfully directed to terminate docket entries 177 and 178.

**SO ORDERED.**

**Dated: April 3, 2020**
      **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**