

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 10, 2020

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>United States</u> v. <u>Albert McDuffie</u>, 19 Cr. 212 (VEC)

Dear Judge Caproni:

      The defendant in the above-captioned case is scheduled to be sentenced on September 23, 2020 at 11:00 a.m. The Government respectfully submits this letter in connection with sentencing. The applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range is 87 to 108 months' imprisonment (the "Guidelines Range"). For the reasons set forth below, the Government submits that a sentence within the Guidelines Range is appropriate in this case.

**I.    Offense Conduct**

    **A.  Overview of the Conspiracy**

      Albert McDuffie, a/k/a "Alley Cat," the defendant, was a member of a large-scale drug trafficking ring that sold powder and crack cocaine throughout the tri-state region, including the Bronx, Queens, Long Island, and Connecticut. McDuffie was one of the organization's biggest dealers. He regularly received both powder and crack cocaine from Watson, the leader of the organization, but he had other sources as well. He also sold more than just powder and crack cocaine—at the time of his arrest, the Drug Enforcement Administration ("DEA") found over half a kilogram of fentanyl hidden inside the walls of his apartment, along with a huge cache of firearms.

      Through wire interceptions and physical surveillance footage, the Government documented numerous occasions in which McDuffie arranged to obtain drugs from Watson, then went to Watson's house and completed the pick-up. The Government also intercepted McDuffie arranging to supply other members of the conspiracy—such as co-defendant Steve Campbell—with cocaine, which McDuffie would then arrange to pick up from Watson. And the Government used confidential sources to purchase both powder and crack from McDuffie's apartment, where he lived with his elderly grandmother.

The investigation showed that McDuffie was both supplying large amounts of powder and crack cocaine—up to at least 200 grams at a time—to street-level dealers, and also selling directly to users, such as the confidential informant.

At the time of McDuffie's arrest, the DEA recovered powder cocaine, crack cocaine, and fentanyl hidden throughout the apartment. The DEA also found *thirteen* illegal firearms, some of which were hidden inside walls. These firearms included an AK-47-style rifle, a TEC-9 type weapon, a .44 caliber pistol, and another weapon similar to an MP5.

## II. Procedural History

The defendant was charged in a one-count indictment charging him and eight other individuals with conspiring to distribute and possess with intent to distribute 280 grams and more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A). On December 20, 2019, the defendant pled guilty, pursuant to a plea agreement, to the lesser-included offense of conspiring to distribute and possess with intent to distribute 28 grams and more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B).

The plea agreement calculated a Guidelines range 87 to 108 months' imprisonment, with a statutory minimum term of imprisonment of 60 months. Pursuant to U.S.S.G. § 2D1.1(c)(5), the base offense level for Count One is 30, because the offense involved a quantity of approximately 280 grams of cocaine base, 500 grams of cocaine, and 542 grams of fentanyl, yielding a converted drug weight of 2,811 kilograms. Two points were added pursuant to U.S.S.G. § 2D1.1(b)(1) because the defendant possessed a firearm during the offense. The base offense level is reduced by three levels because of the defendant's timely acceptance of responsibility, resulting in a total offense level of 29. With a criminal history category of I, the defendant's Guidelines Range is 87 to 108 months' imprisonment. The Probation Office agrees with this calculation and is recommending a sentence within the Guidelines range.

## III. Discussion

### A. Applicable Law

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* & n.6. Those factors make a Guidelines sentence appropriate in this case.

## B. A Guidelines Sentence Is Appropriate In This Case

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others who are similarly situated, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A)-(C). These considerations weigh in favor of a sentence within the Guidelines Range.

*First*, a sentence within the Guidelines Range would appropriately reflect the nature and seriousness of the defendant's conduct. McDuffie was a major dealer. On the day of his arrest, the DEA recovered over half a kilogram of fentanyl, 60 grams of cocaine hydrochloride, and approximately a kilogram of phenacetin, a substance commonly used to cut heroin—which has itself been banned in the United States because of its link to kidney disease. This seizure represents just one day of an operation that spanned years. The wires and surveillance in the case showed that McDuffie, who lacked legitimate employment, was a full-time drug dealer, selling huge amount of the most dangerous drugs on the market. McDuffie suppled other dealers, but he also came face-to-face with users and addicts, whose addictions he chose to exploit in order to line his own pockets. And he protected his drug business with an arsenal of guns—*thirteen* in total, and not one of them owned legally—strategically hidden around his property. The danger McDuffie posed to the community cannot be overstated.

*Second*, a sentence within the Guidelines Range is necessary to promote respect for the law and to deter this defendant and others who are similarly situated from participating in drug trafficking offenses. We recognize that this offense is McDuffie's first conviction, but that appears to be the result of successfully evading law enforcement rather than his living a crime-free life. According to a cooperating witness ("CW-1"), McDuffie and Watson were both supplying CW-1 with large amounts of cocaine as far back as 2009, which CW-1 then sold to users on the streets.[1] And while McDuffie himself was never arrested for selling drugs, his brother was sentenced in 2010 to a ten-year federal sentence, which should have sent a clear message to McDuffie that selling drugs would be met with serious consequences, but did not. At age 47, McDuffie is well past the age when most criminals give up their criminal lifestyle, but McDuffie has shown no signs of stopping. A Guidelines Sentence will emphasize to McDuffie that he must put drug dealing behind him, once and for all, and will deter others who are similar situated.

*Third,* a Guidelines sentence recognizes the relative culpability of McDuffie to his co-defendants. Co-defendants Perry Wells and Karl Duncan received sentences of 90 months' imprisonment and 72 months' imprisonment, respectively. Both sentences represent significant amounts of time and reflect the serious quantity of drugs that the operation was dealing. McDuffie

---

[1] In recommending a sentence at the bottom of the Guidelines Range, the Probation Office states that "[t]he defendant's involvement in the instant offense began after he became unemployed [in 2015]. He has no criminal history which is indicative of an individual with the ability to live a law-abiding life." PSR at 24. This assessment appears to assume that, because McDuffie was not charged with dealing drugs before 2015, that he was not in fact dealing drugs before 2015. To the contrary, McDuffie's drug dealing predated his unemployment by at least six years. His decision to stop legitimate work was more likely the result of his financial success in his illegal work, rather than the other way around.

was not only dealing similar quantities of cocaine and crack as these defendants, but he was also dealing fentanyl, an even more dangerous substance. Moreover, McDuffie's drug operation was even more dangerous than that of the other defendants, because he was protecting his operation with guns.

In sum, a sentence within the Guidelines Range adequately would balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

## IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the Guidelines Range of 87 to 108 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:  ___/s/_____
Adam S. Hobson
Louis A. Pellegrino
Assistant United States Attorneys
(212) 637-2484 / 2617

cc: Thomas Dunn, Esq. (via ECF)